Joseph Brian BENITES, Petitioner-Appellee,

v.

UNITED STATES PAROLE COMMISSION and Warden, Federal Prison Camp, Safford, Arizona, Respondents-Appellants.

No. 76–3458.

United States Court of Appeals, Ninth Circuit.

April 24, 1979.

---

* The Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation.

Patrick J. Glynn, Phoenix, Ariz., for petitioner-appellee.

Samuel Alba, Asst. Federal Public Defender, Phoenix, Ariz., Tom O'Toole, Federal Public Defender, Phoenix, Ariz., for respondents-appellants.

Before CHAMBERS and WALLACE, Circuit Judges, and BARTELS *, District Judge.

CHAMBERS, Circuit Judge:

In April 1974 Benites pleaded guilty to bank robbery and was sentenced under the Youth Corrections Act, 18 U.S.C. § 5010(c). On April 30, 1976, while incarcerated at the Federal Prison Camp at Safford, Arizona, he was given a parole hearing, denied release, and informed that he would have another hearing in April 1977.

The case worker's progress report, which had been prepared in March 1976, in anticipation of the parole hearing, was favorable to Benites and recommended that he had a "reasonable chance of completing the terms of parole, if released". The case worker stated that Benites was married, had two offers of employment, had been on several work furloughs successfully, had utilized his time well during the 28 months he had been incarcerated, and had completed certain educational and vocational courses.

* The Honorable John R. Bartels, United States District Judge for the Eastern District of New York, sitting by designation.

■ The reasons given by the Parole Commission [1] for denying parole were as follows:

> "Your offense behavior has been rated as very high severity. You have a salient factor score of six. You have been in custody a total of 29 months. Guidelines established by the Board for youth cases which consider the above factors indicate a range of 27–32 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that a decision at this consideration above the guidelines appears warranted because there were multiple bank robberies and the theft of several automobiles."

Benites petitioned for a writ of habeas corpus [2] asserting that the Commission's decision was predicated on an intent to punish him and was therefore contrary to the intent of the Youth Corrections Act. The district judge granted partial relief in the nature of an order for a new hearing after finding that the use of the guidelines as they were constructed made the nature and severity of petitioner's offense the "critical" factor in determining his parole eligibility. He found that this was contrary to the philosophy of the Youth Corrections Act and therefore illegal. He found that the legislative history of the Youth Corrections Act showed that the offender's response to treatment and his rehabilitation were to be the primary factors in determining parole eligibility, and that severity of the offense "should only enter into the decision process in a close case where there may be some doubt as to whether the offender is rehabilitated." He then ordered limited habeas corpus relief in the nature of an order for a new hearing within 30 days, at which the Commission would "give primary considera-

tion to petitioner's response to treatment and the question of his rehabilitation." This appeal by the government followed.

The district judge was correct in his conclusion that offense severity was the critical factor in denying parole. The guidelines rated bank robbery as of "very high severity" and thus called for a period of from 27–32 months to be served. Moreover, the decision of the Commission to require longer confinement was solely because there were "multiple" bank robberies and the theft of "several" automobiles.

■ The district judge was also correct in his characterization of the philosophy of the Youth Corrections Act. The legislative history (1950 U.S.Code Cong. Service, pp. 3983 et seq.) demonstrates that institutional performance was to be the "primary criterion in determining parole release". *Rifai v. United States Parole Commission*, 586 F.2d 695 (9th Cir. 1978). The youth's rehabilitation was to be the focal point of the hearing. *De Peralta v. Garrison*, 575 F.2d 749 (9th Cir. 1978); see *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). Severity of the youth offender's crime was "conspicuously absent" as a factor to be considered in assessing his parole eligibility. *Shepard v. Taylor*, 556 F.2d 648 (2nd Cir. 1977).

The Commission argues that use of the guidelines in this case was in keeping with parole standards set by the Parole Commission and Reorganization Act of 1976. Clearly, with its enactment, a new philosophy was adopted in which severity of the offense was to play a dominant role in determining parole eligibility under guidelines. The 1976 Act was explicitly made applicable to youth offenders. Section 5017 of Title 18 was amended to apply to youth offenders the same criteria for release as were applied to adults. 18 U.S.C. § 4206.

---

1. The petition was framed as one for relief under Section 2255 of Title 28 or, in the alternative, for habeas corpus under Section 2241. An attack on the execution of a federal sentence is properly made under Section 2241. *Tedder v. United States Board of Parole*, 527 F.2d 593 (9th Cir. 1975). We therefore so construe the petition. The district court was the proper court to entertain either petition as it

was both the sentencing court and the court having jurisdiction over the parties.

2. Known as the Board of Parole on the dates in question. The title was changed with the enactment of the Parole Commission and Reorganization Act of 1976, P.L. 94–233, 90 Stat. 219. We will refer to it as the Parole Commission.

But the 1976 Act is not applicable to this case. Although it was approved on March 15, 1976, its relevant provisions did not take effect until 60 days thereafter, on May 14, 1976. P.L. 94–233, § 16(b); *De Peralta v. Garrison, supra.* It was thus not even in effect on the date of Benites' parole hearing, on April 30, 1976. Moreover, even if it had been in effect on that date, it could not be applied retroactively in a Youth Corrections Act case without raising fatal ex post facto problems. *De Peralta v. Garrison, supra; White v. Warden,* 566 F.2d 57 (9th Cir. 1977). Benites was entitled to the benefits of the parole law in effect when he was sentenced in 1974. As the district judge held, institutional performance and rehabilitation were the criteria that should have been employed. We therefore affirm.