16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald HARRIS, Defendant-Appellant.
 No. 93-5706.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1994.
 
 Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Ronald Harris, appeals his conviction for violation of 21 U.S.C. Sec. 841(a)(1) for possessing a controlled substance with intent to distribute.
 
 I.
 
 2
 On July 25, 1991, the Memphis police executed a search warrant at 966 Leon Place, Apt. 1, Memphis, Tennessee. Defendant, who was on the premises of the apartment, was detained while the search was conducted. After 11.1 grams of solid cocaine and 7.6 grams of powder cocaine were found, defendant was arrested and taken to the organized crime unit office, where he issued a confession indicating that the drugs were his.
 
 
 3
 On August 7, 1991, defendant was indicted by a federal grand jury for the Western District of Tennessee. On August 21, 1991, defendant was arraigned and entered a plea of not guilty. On September 17, 1991, defendant filed a motion to suppress his confession, alleging that he had been hit by a police officer and denied an insulin shot until he was forced to confess. After an evidentiary hearing, the district court denied the motion to suppress on November 1, 1991.
 
 
 4
 After a jury trial commencing on April 13, 1992, defendant was found guilty of both counts of possession with intent to distribute a controlled substance--11.1 grams of cocaine base and 7.6 grams of cocaine. On April 24, 1992, defendant filed a motion for a new trial which was denied on May 1, 1992. On April 26, 1993, defendant was sentenced to 63 months imprisonment on each count to run concurrently and to 4 years supervised release.
 
 
 5
 Defendant filed a timely notice of appeal.
 
 II.
 
 6
 We must first decide whether the district court erred in denying defendant's motion to suppress his confession.
 
 
 7
 Defendant alleges that the motion to suppress his confession should have been granted because the confession would not have been given but for the coercive tactics engaged in by the police and was, therefore, involuntary. At the hearing on the motion to suppress, defendant testified that he was hit in the head, cursed and thrown down when the police were executing the search warrant. Defendant's mother testified that after his arrest, she saw defendant with a lump and an abrasion on his head which had not been present prior to his arrest. Defendant alleged that although he was diabetic and requested five times that he be allowed to take an insulin shot with an insulin syringe, which was stored in the refrigerator at 966 Leon Place, his requests were denied or ignored. He testified that at the police station, his requests continued to be ignored and he was told by Sergeant Huff that he would get his insulin only after he answered questions. Defendant testified he was handcuffed to a chair with his insulin and food placed on the table in front of him and that he was made to complete and sign his confession before the handcuffs were removed and he was allowed to take his insulin shot and eat his meal. Defendant alleged his handcuffs were not removed until 8:25 p.m., more than 2 1/2 hours after the normal time for his shot and that he was feeling tired, frightened, hungry, sweaty, confused, and had pain in his legs and head. Defendant contended that his mental state was so weakened by the lack of insulin and food that the coercive behavior engaged in by the officers overpowered his ability to think freely, causing him to make an involuntary statement.
 
 
 8
 At the hearing on the motion to suppress, the four police officers who executed the search warrant and took defendant's confession also testified. The government contends that based on their testimony, contrary to defendant's assertions, the following occurred: the officers testified that defendant was detained while they executed the search warrant at 966 Leon Place, but was not treated badly, appeared to be in a clear state of mind, and showed no signs of distress.
 
 
 9
 Specifically, Sergeant Cook, who is a diabetic, testified that after finding an insulin syringe in the refrigerator at 966 Leon Place, he talked with defendant about defendant's diabetic condition. He testified that at no time did defendant indicate he wanted to take his insulin even though defendant was specifically asked if he needed his shot, and defendant did not appear to be having any reaction or withdrawal from not being properly medicated. This was corroborated by the testimony of Officer Kitsmiller, who stated that defendant had said that he did not need his insulin shot until he ate and that he was not due to eat at that time. Officer Kitsmiller testified that defendant appeared normal and rational and did not show any type of mental stress.
 
 
 10
 The officers testified that after defendant was arrested and taken to the organized crime unit, his insulin shot was placed in front of him in order to have it readily available and that he could have taken the shot at any time, but he did not request to take it. Sergeant Cook testified that he offered to get defendant some food, which is necessary when an insulin shot is taken, and that after defendant indicated that he would like some food, Sergeant Cook went to Wendy's for a hamburger and french fries. When he returned, Sergeant Cook stated that he observed Officer Berryhill taking defendant's statement, and that defendant never was told he had to give a statement in order to receive food and his insulin shot. Sergeant Cook testified that he too was diabetic and that defendant did not appear to be exhibiting any physical manifestations, such as sweating and confusion, from failure to take his insulin shot on time. He testified that even if a diabetic waited a little too long to take an insulin shot, the resulting condition would not set in for a day or two. Officer Berryhill also testified that defendant never requested that he be given his insulin and that defendant did not act confused or nervous when he made his confession.
 
 
 11
 In regard to defendant's allegation that he had been hit by a police officer when the search warrant was executed, all the officers testified that this was not true. Deputy Thompson, who processed defendant upon his arrival at the police station, stated that defendant made no mention that he was suffering from a facial contusion and a photograph taken one day after his arrest did not show any type of contusion or swelling in defendant's facial area.
 
 
 12
 This court in McCall v. Dutton, 863 F.2d 454 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989), articulated the proper analysis for evaluating the voluntariness of a confession.
 
 
 13
 The test for voluntariness of a confession involves three factors. Threshold to the determination that a confession was "involuntary" for due process purposes is a requirement that the police "extorted [the confession] from the accused by means of coercive activity." Once it is established that the police activity was objectively coercive, it is necessary to examine petitioner's subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused. Finally, petitioner must prove that his will was overborne because of the coercive police activity in question. If the police misconduct at issue was not the "crucial motivating factor" behind petitioner's decision to confess, the confession may not be suppressed.
 
 
 14
 Id. at 459 (citations omitted). With regard to findings of fact on the issue of voluntariness, an appellate court will not disturb the district court's findings of the specific external occurrences and events surrounding the confession unless there is clear error. United States v. Murphy, 763 F.2d 202, 206 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986); United States v. Dennis, 701 F.2d 595, 598 (6th Cir.1983); United States v. Brown, 557 F.2d 541, 547 (6th Cir.1977). A clearly erroneous standard of review also applies to the district court's resolution of conflicts in testimony. Dennis, 701 F.2d at 598; Brown, 557 F.2d at 547. The trial court is afforded substantial deference because of its superior opportunity to observe the demeanor of witnesses and judge their credibility. Id. at 548 (the district court's findings regarding whether the defendant made statements attributed to him and whether he had been beaten by police were findings of fact entitled to the clearly erroneous standard).
 
 
 15
 In the present case, after hearing the testimony of defendant and the police officers at the suppression hearing, the district court stated:
 
 
 16
 The evidence in this case is really far more than the preponderance of the evidence. Particularly from the officers is that Mr. Harris was not physically abused in any way. When the Court considers all the testimony, including that of Mr. Harris, I think the Court will have to deny the Motion to Suppress statement.
 
 
 17
 Frankly, the testimony of Sergeant Cook indicates that he treated Mr. Harris in a very humane way. In fact, I was rather impressed with the humane way he treated Mr. Harris.... What I think the Court will do, though, is submit this whole issue to the jury during the course of the trial and then let the jury pass on the question of the voluntariness of the statement and in that way I think we will handle it in the best possible way.
 
 
 18
 The district court's credibility determinations, which are due substantial deference, between the conflicting testimony of defendant and the police officers are not clearly erroneous. Although defendant alleged his confession was extorted through coercive police activity, Officer Berryhill, Sergeant Cook, and Sergeant Huff all testified that defendant was not treated badly, was not struck by the officers, and was not denied his insulin. The officers also testified that defendant never requested them to give him his insulin shot at the apartment or at the organized crime unit, that he did not exhibit any physical or mental signs of distress, and that he appeared normal in all respects. The officers' testimony, which was deemed credible by the district court, is sufficient to establish that the confession was voluntary.
 
 
 19
 For these reasons, the district court did not err in determining that the officers' conduct was not objectively coercive and the confession was voluntary. The district court is affirmed on this issue.
 
 III.
 
 20
 We must next decide whether the district court erred in finding sufficient evidence to sustain the conviction.
 
 
 21
 Defendant alleges that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence for the jury to find the confession was voluntary and to show that the drugs belonged to defendant.
 
 
 22
 Under the standard articulated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), upon review of a motion for acquittal, all evidence must be viewed in the light most favorable to the government. This standard also applies to review whether the evidence adduced at trial was sufficient to support a jury's verdict. United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983). In making such a determination, the reviewing court must resolve all reasonable inferences which may be drawn from the evidence, as well as all conflicts in testimony, in the government's favor. Id.; United States v. Wolfenbarger, 426 F.2d 992, 994 (6th Cir.1970). A finding of guilt may be based on circumstantial evidence which does not remove every reasonable hypotheses except that of guilt. United States v. Cooper, 577 F.2d 1079, 1085 (6th Cir.), cert. denied, 439 U.S. 868 (1978).
 
 
 23
 In the present case, the conflict between the government witnesses' testimony and defendant's testimony in regard to the circumstances surrounding the confession involved a credibility determination. If all inferences are drawn in the prosecution's favor, there is sufficient evidence to sustain a guilty verdict based on the district court's determination that defendant's statement was voluntary and truthful as previously discussed.
 
 
 24
 Likewise, if the evidence is viewed in the light most favorable to the prosecution, it is sufficient to establish that defendant possessed the drugs with the intent to distribute. Defendant was found in the living room of the apartment where the search warrant was executed. Although the apartment was actually leased to another individual, defendant had the keys to the apartment and admitted that he had had the keys for approximately one month. Furthermore, the actual lessee of the apartment was not present. While searching in the bedroom closet, Officer Kitsmiller found a sock containing a plastic bag which contained three bags of crack cocaine and two bags of powdered cocaine. After being advised of his rights, defendant admitted that both the crack and powdered cocaine belonged to him, and that he had been selling drugs for a couple of months. This evidence established defendant's presence in the apartment, his ability to gain entry into the apartment by use of a key which he had had for approximately one month, his control of the apartment at the time of the arrest, his admissions to the law enforcement officers that the crack and powder cocaine belonged to him, that the drugs were sufficient in amount to indicate they were intended for distribution, and that defendant had been involved in selling narcotics for several months. Based on this evidence, a rational trier of fact could find defendant possessed the cocaine with the intent to distribute it. The district court is affirmed on this issue.
 
 IV.
 
 25
 Defendant also argued that the district court's jury instructions were in error because he did not instruct the jury to disregard the truth or falsity of defendant's confession prior to making an initial decision about whether or not the confession was voluntary. Defendant cites no authority for this allegation. Moreover, because defendant did not object to the jury charge at trial, the appropriate standard of review is plain error. Fed.R.Crim.Pro. 52(b); United States v. Olano, 113 S.Ct. 1770 (1993); United States v. Busacca, 863 F.2d 433, 435 (6th Cir.1988), cert. denied, 490 U.S. 1005 (1989).
 
 
 26
 In the present case, the district court used the Devitt and Blackmar Federal Jury Instruction 15.07, stating:
 
 
 27
 If it appears from the evidence in a case that a confession, statement, or admission of the defendant, Ronald Harris, would not have been made, but for some threat of harm or some offer or promise of immunity from prosecution or leniency in punishment, or other reward, such a confession should not be considered as having been voluntarily made, because of the danger that a person accused might be persuaded by the pressure of hope or fear to confess as facts things which are not true, in an effort to avoid threatened harm or punishment, or to secure a promised reward.
 
 
 28
 If the evidence in the case leaves you with a reasonable doubt as to whether a confession, statement, or admission was voluntarily made, then you should disregard it entirely.
 
 
 29
 If on the other hand, you find that the confession, statement, or admission in evidence was voluntarily made, then you will give it such weight as you feel it deserves under the circumstances.
 
 
 30
 This instruction clearly sets forth the jury's duty in determining the voluntariness of a defendant's confession, stating that if the jury has a reasonable doubt about the voluntariness of the statement, they should disregard it entirely. We believe this instruction sufficiently states the law, and the district court's failure to include a statement that the jury could not consider the truth or falsity of defendant's statement before determining whether his confession was voluntary is not plain error. The district court is affirmed on this issue.
 
 V.
 
 31
 Finally, defendant argued that the district court erred in not giving an instruction that defendant's confession must be corroborated by independent evidence, relying on United States v. Marshall, 863 F.2d 1285 (6th Cir.1988). However, United States v. Marshall is distinguishable from the present case, because in Marshall, there was no corroboration of the crime except for the defendant's admission that he distributed the cocaine. In contrast, in the present case, there is independent evidence that the criminal act took place. As stated in Marshall, 863 F.2d at 1287, in such a case the "corpus delicti" satisfies the corroboration requirement. In the present case, there was independent evidence beyond defendant's confession that the crime had been committed. The cocaine was actually found by the police officers and was admitted as an exhibit at trial. This cocaine was found to be in the constructive possession of defendant. The cocaine was in a sufficient amount from which a jury could find that it was being held for distribution purposes. Because the corpus delicti requirement has been met in the present case, there is no need for other independent corroboration. United States v. Sims, 975 F.2d 1225, 1240 (6th Cir.1992), cert. denied, 113 S.Ct. 1315 (1993). Therefore, there was no need for the district court to give an independent corroboration instruction. The district court is affirmed on this issue.
 
 VI.
 
 32
 For the above reasons, the judgment of the district court is hereby AFFIRMED.